---

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Southern District of New York

Case number (*if known*): _____ Chapter 15

☐ Check if this is an
amended filing

---

Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding    12/15

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).

| | |
|---|---|
| 1. **Debtor's name** | The Bankruptcy Estate of Norske Skogindustrier ASA |
| 2. **Debtor's unique identifier** | **For non-individual debtors:**<br><br>☐ Federal Employer Identification Number (EIN) __ __ – __ __ __ __ __ __ __<br><br>☑ Other 920 148 026 . Describe identifier _____.<br><br>**For individual debtors:**<br><br>☐ Social Security number: xxx – xx– ____ ____ ____ ____<br><br>☐ Individual Taxpayer Identification number (ITIN): **9** xx – xx – ____ ____ ____ ____<br><br>☐ Other _____. Describe identifier _____. |
| 3. **Name of foreign representative(s)** | Tom Hugo Ottesen |
| 4. **Foreign proceeding in which appointment of the foreign representative(s) occurred** | Case No. 17-198212KON-OBYF/1, Oslo County Court |
| 5. **Nature of the foreign proceeding** | *Check one:*<br>☑ Foreign main proceeding<br>☐ Foreign nonmain proceeding<br>☐ Foreign main proceeding, or in the alternative foreign nonmain proceeding |
| 6. **Evidence of the foreign proceeding** | ☐ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.<br><br>☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.<br><br>☑ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.<br>An English translation of the Oslo County Court's decision to open<br>bankruptcy proceedings and appoint Mr. Ottesen as trustee. |
| 7. **Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?** | ☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)<br>☑ Yes |

| Debtor | The Bankruptcy Estate of Norske Skogindustrier | Case number (if known) |
|---|---|---|
| | Name | |

| **8. Others entitled to notice** | Attach a list containing the names and addresses of: |
|---|---|
| | (i) all persons or bodies authorized to administer foreign proceedings of the debtor, |
| | (ii) all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and |
| | (iii) all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code. |

**9. Addresses**

Country where the debtor has the center of its main interests:

Norway

Debtor's registered office:

C/o Tom Hugo Ottesen
Number          Street

1752 Vika
P.O. Box

Oslo 0122
City          State/Province/Region          ZIP/Postal Code

Norway
Country

Individual debtor's habitual residence:

Number          Street

P.O. Box

City          State/Province/Region          ZIP/Postal Code

Country

Address of foreign representative(s):

Tom Hugo Ottesen

1752 Vika
P.O. Box

Oslo 0122
City          State/Province/Region          ZIP/Postal Code

Norway
Country

**10. Debtor's website** (URL)

**11. Type of debtor**

Check one:

☑ Non-individual (check one):

    ❑ Corporation. Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

    ❑ Partnership

    ☑ Other. Specify: Bankruptcy Estate

❑ Individual

| Debtor | The Bankruptcy Estate of Norske Skogindustrier | Case number (if known) _____ |
|---|---|---|
| | Name | |

| 12. Why is venue proper in *this district*? | Check one: |
|---|---|

☐ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

_____.

☑ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

Debtor possess assets within the District. _____.

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✗ _____   Tom Hugo Ottesen
Signature of foreign representative        Printed name

Executed on   11 / 15 / 2018
MM / DD / YYYY

✗ _____   _____
Signature of foreign representative        Printed name

Executed on   _____
MM / DD / YYYY

**14. Signature of attorney**

✗ _____   Date   11/16/18
Signature of Attorney for foreign representative        MM / DD / YYYY

Warren Gluck
Printed name

Holland & Knight LLP
Firm name

31 W. 52nd St., 13th Floor
Number        Street

New York                              NY        10019
City                                  State     ZIP Code

(212) 513-3200                        warren.gluck@hklaw.com
Contact phone                         Email address

4701421                               NY
Bar number                            State

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------x
                                          :    Chapter 15
In re:                                    :
                                          :    Case No. 18-_____ (____)
THE BANKRUPTCY ESTATE OF                  :
NORSKE SKOGINDUSTRIER ASA                 :
                                          :
              Debtor in a                 :
              Foreign Proceeding.         :
-----------------------------------------------------------x
```

## LIST FILED PURSUANT TO BANKRUPTCY RULE 1007(a)(4)

I, Tom Hugo Ottesen, duly appointed trustee and foreign representative ("**Petitioner**" or

"**Trustee**") of the bankruptcy estate of Norske Skogindustrier ASA ("**Norske Skogindustrier**

**Estate**"), a Norwegian bankruptcy estate currently being administered under the supervision of the

Oslo County Court (the "**Oslo Court**"), Case No. 17-198212KON-OBYF/1, (the "**Norway**

**Bankruptcy**"), pursuant to Bankruptcy Act of 8 June 1984 No. 58 (the "**Norway Bankruptcy**

**Act**"), hereby submits the following information as required by Rule 1007(a)(4) of the Federal

Rules of Bankruptcy Procedure, which provides:

> In addition to the documents required under § 1515 of the Code, a foreign
> representative filing a petition for recognition under chapter 15 shall file with the
> petition: (A) a corporate ownership statement containing the information described
> in Rule 7007.1; and (B) unless the court orders otherwise, a list containing the
> name and address of all persons or bodies authorized to administer foreign
> proceedings of the debtor, all parties to litigation pending in the United States in
> which the debtor is a party at the time of the filing of the petition, and all entities against
> whom provisional relief is sought under § 1519 of the Code.

Fed. R. Bankr. P. 1007(a)(4).

## Statement under Fed. R. Bankr. P. 7007.1

The Trustee hereby states that no company currently owns 10% or more of the Norske

Skogindustrier Estate's equity interests.

### Name and Address of All Parties Authorized to
### Administer Foreign Proceedings for the Foreign Debtor

The following individual, with the corresponding business address, has been duly

appointed as Trustee for the Norske Skogindustrier Estate by the Oslo Court:

| Tom Hugo Ottesen | Haakon VIIs Street 10 Oslo Postal Address: Kvale Advokatfirma DA, PO Box 1752 Vika, 0122 OSLO, Norway. |
|---|---|

### All Parties to Litigation in which the Foreign Debtor Is a Party that Is
### Pending in the United States at the time of the Filing of the Petition

There is no known pending litigation in the United States in which Norske Skogindustrier

ASA or the Norske Skogindustrier Estate is a party.

### All Entities Against Whom Provisional Relief Is Sought under 11 U.S.C. § 1519

The Trustee is not seeking provisional relief at this time.

I declare, under penalty of perjury under the laws of the United States of America, that the

information set forth above is based on my current knowledge, information and belief after

reasonable inquiry, and, in contemplation of and subject to supplementation, is true and correct.

Dated: Oslo, Norway
_____ 11/15, 2018

**TOM HUGO OTTESEN**
*Trustee of the Norske Skogindustrier Estate*

2

#61567515_v2

# ▌▌▌ KVALE

*IN-HOUSE TRANSLATION OF OSLO COUNTY COURT'S VERDICT TO OPEN BANKRUPTCY PROCEEDINGS IN NORSKE SKOGINDUSTRIER ASA (911 750 961)*

## OSLO COUNTY COURT

RULING _____

Pronounced: 19.12.2017 at Oslo Court
Case no.: 17-198212KON-OBYF/1
Judge: Judge Helge Johannessen
Case applies to: Bankruptcy petition

_____

Norske Skogindustrier ASA        911 750 961

No restrictions to access to public reproduction



The judge presented bankruptcy petition received on 19 December 2017.


## RULING

Norske Skogindustrier ASA has delivered a petition to have their estate taken under bankruptcy proceedings. It appears that the petition was decided upon by the company's board of directors on 19 December 2017. The petition fulfils the formal requirements of the Bankruptcy Act § 66, second paragraph.

The debtor has provided information that the company's total debt is NOK 9 244 443 378 and that the company's assets have a recorded value of NOK 2 871 309 928. The company's operations are ongoing. The number of employees is 33.

The court bases its ruling on the information provided by the debtor. The company is therefore considered not to be in a position to meet its obligations as they become due. The payment difficulties are not of a temporary nature, and the conditions to grant the petition set out in the Bankruptcy Act § 60 cf. §§ 61 and 62 are therefore present.


## DECISION

The estate of Norske Skogindustrier ASA, Business Register Number 911 750 961, Po box 294 Skøyen, 0213 Oslo, business address Karenslyst Allé 49, 0279 Oslo, is to be taken under bankruptcy proceedings.


\* \* \*


The ruling was pronounced on 19.12.2017 at 10:30 am.

The deadline in accordance with the Creditors' Security Act, §1-2 is considered to be 19.12.2017.
The deadline for sending claims to the trustee is 23.01.2018.


As trustee, cf. the Bankruptcy Act §77, the following was appointed:

| | | |
|---|---|---|
| Lawyer: | Tom Hugo Ottesen | |
| Office: | Haakon VIIs gate 10 | Telephone: 22 47 97 00 |
| Postal address: | Kvale Advokatfirma DA | Fax: 21 0585 85 |
| | PO Box 1752 Vika, 0122 OSLO | |

# ⅠⅠⅠ KVALE

The creditors' meeting in accordance with the Bankruptcy Act §78 first paragraph, no. 3, is scheduled for Tuesday 23 January 2018 at 9 a.m. in Courtroom 616 at the Oslo County Court's premises at Oslo District courthouse, C. J. Hambros plass 4, Oslo. The debtor is obliged to attend.

The debtor or legal representative is unauthorized to dispose of the estate or its assets. The debtor is required by Section XI of the Bankruptcy Act to assist the trustee with obtaining an overview of its financial situation etc. The debtor is required to contact the trustee immediately.


Court dismissed


[sign.]
Helge Johannessen



The court record of the proceedings and schedule of hearings will be served to the debtor.

The ruling may be appealed to the Court of Appeal. An appeal must be sent directly to Oslo County Court (Oslo byfogdembete) within one month of being served.

Appellants must pay a fee of NOK 6,294.

Warren E. Gluck, Esq.
Richard A. Bixter, Jr., Esq. *(pro hac pending)*
Sheila (Qian) Shen, Esq.
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Phone:  212-513-3200
Fax: 212-385-9010
warren.gluck@hklaw.com
richard.bixter@hkalw.com
qian.shen@hklaw.com

*Counsel for the Petitioner*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

| | | |
|---|---|---|
| | : | Chapter 15 |
| In re: | : | |
| | : | Case No. 18-_____ (____) |
| THE BANKRUPTCY ESTATE OF | : | |
| NORSKE SKOGINDUSTRIER ASA | : | |
| | : | |
| Debtor in a | : | |
| Foreign Proceeding. | : | |

-------------------------------------------------------x

## VERIFIED PETITION FOR RECOGNITION OF FOREIGN INSOLVENCY PROCEEDING AND APPLICATION FOR ADDITIONAL RELIEF PURSUANT TO SECTIONS 1504, 1507, 1509, 1515, 1517, 1520 AND 1521 OF THE BANKRUPTCY CODE

Tom Hugo Ottesen, duly appointed trustee and foreign representative ("**Petitioner**" or "**Trustee**") of the bankruptcy estate of Norske Skogindustrier ASA ("**Norske Skogindustrier Estate**"), a bankruptcy estate currently being administered under the supervision of the Oslo County Court (the "**Oslo Court**"), Case No. 17-198212KON-OBYF/1 (the "**Norway Bankruptcy**"), pursuant to the Bankruptcy Act of 8 June 1984 No. 58 (the "**Bankruptcy Act**")[1] by its undersigned United States counsel, Holland & Knight LLP, respectfully submits the Official

---

[1] Excepts of the relevant provisions of the Norway Bankruptcy Act are attached as Exhibit 1 to the Foreign Counsel Declaration.

1

Form Petition, this Verified Petition (together, the "**Petition**"), the accompanying Declaration of

Jon Skjørshammer executed on November 16, 2018 (the "**Foreign Counsel Declaration**"), and

the Declaration of Tom Hugo Ottesen, executed on November 15, 2018 (the "**Ottesen**

**Declaration**"), for entry of an Order pursuant to chapter 15 of title 11 of the United States Code,

11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"):

(i)     recognizing the Norway Bankruptcy as a foreign main proceeding, pursuant to chapter 15 of the Bankruptcy Code, and Petitioner as the Norske Skogindustrier Estate's foreign representative under sections 1509 and 1517 of the Bankruptcy Code;

(ii)    granting automatic relief pursuant to section 1520 of the Bankruptcy Code to the Petitioner and the Norske Skogindustrier Estate;

(iii)   granting other and additional relief pursuant to sections 1507 and 1521(a) and (b) of the Bankruptcy Code, including:

(a) authorizing Petitioner to examine witnesses, take evidence and seek the production of documents concerning the assets, affairs, rights obligations or liabilities of Norske Skogindustrier ASA and/or the Norske Skogindustrier Estate, so as to ascertain critical information concerning Norske Skogindustrier ASA and/or the Norske Skogindustrier Estate's assets as well as claims against third parties (as set forth in detail below and in the accompanying Ottesen and Foreign Counsel Declarations);

(b) granting the Petitioner authority to assert claims of Norske Skogindustrier ASA and/or the Norske Skogindustrier Estate against parties that are subject to the jurisdiction of courts in the United States;

(c) ordering that the administration or realization of any assets of Norske Skogindustrier ASA and/or the Norske Skogindustrier Estate within the territorial jurisdiction of the United States be entrusted to the Petitioner as the exclusive representative of the Norske Skogindustrier Estate in the United States; and

(d) granting such other and further relief as the Court may deem just and proper.

## **PRELIMINARY STATEMENT**

1.      This Court previously has noted that "[u]nique to the Bankruptcy Code," chapter

15 contains a statement of purpose, which is: "to incorporate the Model Law on Cross-Border

Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency

. . . ."  *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 126 (Bankr. S.D.N.Y. 2007) (quoting 11 U.S.C. § 1501), *aff'd*, 389 B.R. 325, 339 (S.D.N.Y. 2008).   Among the express objectives of chapter 15 is to promote the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor[.]"  11 U.S.C. § 1501(a)(3).

2.     The Petitioner requests recognition of the Norway Bankruptcy as a foreign main proceeding to ensure that any assets in the United States, including but not limited to claims, are properly administered, and that the Norske Skogindustrier Estate or the Petitioner, as appropriate, are enabled to commence any relevant or appropriate litigation or discovery in United States Courts.  Ottesen Declaration, ¶¶ 44-48.  The Petitioner is currently investigating the assets and potential claims of Norske Skogindustrier ASA and the Norske Skogindustrier Estate, and seeks the authority to commence relevant discovery in the event that the Petitioner's investigation deems such discovery necessary and appropriate.  Ottesen Declaration, ¶ 46-47.

3.     As this Petition, the accompanying declarations and the exhibits thereto demonstrate, the Norway Bankruptcy should be recognized as a foreign main proceeding.

4.     The Petitioner seek precisely the type of relief that chapter 15 was designed to provide, and the Norway Bankruptcy and this Petition meet all the requirements for recognition and the requested relief.  In particular, the Petitioner was appointed by the Oslo Court to administer the Norske Skogindustrier Estate, including all of Norske Skogindustrier ASA's and the Norske Skogindustrier Estate's assets, liabilities, and any ongoing business occurring in connection with the court-ordered Norway Bankruptcy pursuant to the Bankruptcy Act, a law relating to insolvency or adjustment of debt.  Ottesen Declaration, ¶ 29; Foreign Counsel Declaration, ¶ 13.

5.      Likewise, the Norway Bankruptcy is a collective judicial proceeding as referenced in 15 U.S.C. § 101(23), subject to the oversight and control of the Oslo Court, encompassing all creditors and stakeholders of the Norske Skogindustrier Estate, which is pending in Norway, the country in which Norske Skogindustrier ASA ("**Norske Skogindustrier**") was formed, maintains its registered office, maintains its center of main interests ("**COMI**"), and where the Petitioner is engaged in substantial, non-transient economic activity associated with the administration of the Norske Skogindustrier Estate.  Ottesen Declaration, ¶¶ 31-41.

6.      Pursuant to section 1516(c) of the Bankruptcy Code, Norway is presumed to be the Norske Skogindustrier Estate's COMI because Norske Skogindustrier was incorporated there and maintains its registered office there and because the Petitioner is administering the Norske Skogindustrier Estate from Norway. Ottesen Declaration, ¶¶ 36-39.  This Petition and the accompanying declarations further demonstrate that the Norske Skogindustrier Estate's counterparties and creditors have clear and actual knowledge that Norske Skogindustrier is a Norwegian entity.  Ottesen Declaration, ¶ 40.  Since at least the commencement of the Norway Bankruptcy on December 19, 2017, Norway has been the obvious and demonstrable "nerve center" of Norske Skogindustrier Estate's ongoing operations.   Hence, the Norway Bankruptcy is a "foreign main proceeding" within the meaning of sections 101(23), 1502(4), 1516(c), and 1517(b)(1) of the Bankruptcy Code.

7.      This District has recognized similar liquidation proceedings by Nordic entities as foreign main proceedings under similar circumstances.  *In re Containership Company (TCC) A/S*, Case No. 11-12622 (Bankr. S.D.N.Y. July 1, 2011) (granting recognition of Danish liquidation as a foreign main proceeding); *In re Atlas Shipping A/S*, Case. No. 09-10314 (Bankr. S.D.N.Y. February 25, 2009) (granting recognition of Danish liquidation as a foreign main proceeding); *In*

*re Britannia Bulkers A/S*, Case No. 08-15187 (Bankr. S.D.N.Y. January 30, 2009) (granting recognition of Danish liquidation as a foreign main proceeding and granting discovery requests); *See also, Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452 (2d Cir. 1985) (vacating an attachment against a Swedish debtor's assets and recognizing a Swedish foreign insolvency proceeding).

8.      Moreover, the relief requested here – authorization to take discovery in support of a foreign insolvency proceeding and prospective claims arising from the company's transactions prior to commencement of the insolvency proceeding – has been granted recently by this and other courts in similar contexts. *See In re Platinum Partners Value Arbitrage Fund LP*, No. 16-12925 (SCC) (Bankr. S.D.N.Y.) (recognizing foreign liquidation as a foreign main proceeding and authorizing broad discovery); *In re Niton Fund SPC*, 15-13252 (SMB) (Bankr. S.D.N.Y.) (recognizing foreign liquidation as a foreign main proceeding and authorizing discovery); *In re Lawndale Group S.A.*, No. 15-11352 (SCC) (Bankr. S.D.N.Y. July 6, 2015) (recognizing liquidation of British Virgin Islands entity as foreign main proceeding and granting 1521(a)(4) request to engage in intermediary bank discovery regarding claims); *In re Pioneer Freight Futures*, No. 13-12324 (Bankr. S.D.N.Y. Aug. 23, 2013) (recognizing foreign liquidation as foreign main proceeding and granting similar intermediary bank discovery relief); *In re Farenco Shipping Co. Ltd.*, 11-14138 (REG) (Bankr. S.D.N.Y. Sept. 7, 2011) (recognizing foreign liquidation as a foreign main proceeding and granting, *inter alia,* intermediary bank discovery relief sought); *In re Transfield ER Cape Ltd.*, No. 10-106270 (MG) (Bankr. S.D.N.Y. Jan. 13, 2011) (BVI liquidation considered a foreign main proceeding and subsequently, intermediary bank discovery in respect of third party claims sought and obtained without objection on notice to Court); *In re Saad Invs. Fin. Co. (No. 5) Ltd.*, No. 09-13985 (KG) (Bankr. D. Del. Dec. 17, 2009)

(recognizing Cayman Islands liquidation as foreign main proceeding and, in 2014, granting bank discovery relief); *see also In re Tranen Capital Alternative Investment Fund Ltd.,* No. 15-12620 (SHL) (Bankr. S.D.N.Y. Oct. 29, 2015) (recognizing foreign insolvency proceeding as a foreign main proceeding and granting principal requested relief - 1521(a)(4) discovery); *In re British American Isle of Venice (BVI), Ltd.*, 441 B.R. 713 (Bankr. S.D. Fla. 2010) (recognition of offshore funds as foreign main proceedings); *In re Grand Prix Assocs., Inc.,* No. 09-16545 (DHS), 2009 WL 1410519 (Bankr. D.N.J. May 18, 2009) (recognizing BVI liquidation as foreign main proceeding).

9.      The Norske Skogindustrier Estate maintains intangible assets in the United States and in this District.

10.      For all of these reasons and as will be shown below, the Petitioner respectfully submits that: (i) the Norway Bankruptcy is a foreign main proceeding within the meaning of sections 101(23) and 1502(4) of the Bankruptcy Code; (ii) the Petitioner is the duly appointed foreign representative of the Norske Skogindustrier Estate within the meaning of section 101(24); (iii) the Petitioner and the Petition comply with all the requirements of section 1515 and Bankruptcy Rule 1007(a)(4); and (iv) recognition of the Norway Bankruptcy would not be contrary to public policy under Bankruptcy Code section 1506.

11.      Under the circumstances, this Court can and should enter an order recognizing the Norway Bankruptcy as a foreign main proceeding under section 1517(b)(l) and granting additional relief as set forth in sections 1507, 1520 and 1521 of the Bankruptcy Code.

## **JURISDICTION AND VENUE**

12.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and sections 109 and 1501 of the Bankruptcy Code.

13.     Venue of this proceeding is proper in this District pursuant to 28 U.S.C. § 1410(3) because Norske Skogindustrier has property in the United States and within this District.

14.     The Norske Skogindustrier Estate satisfies the property requirement in 11 U.S.C. § 109(a).  *See In re Barnet*, 737 F.3d 238, 247-51 (2d Cir. 2013).

15.     Additionally, entities from which the Petitioner will potentially be seeking discovery also are subject to jurisdiction in this District.

16.     This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

## FACTUAL BACKGROUND

### Norske Skogindustrier's Pre-Liquidation Operations

17.     Norske Skogindustrier is a Norwegian limited liability company organized under the laws of Norway, with its registered office at P.O. Box 294 Skoyen, Oslo, Norway and its principal place of business located at Karenslyst Alle 49, 0279, Oslo, Norway.   Ottesen Declaration, ¶ 10.

18.     Norske Skogindustrier's primary operations consisted of acting as ultimate parent company for various paper production subsidiaries and holding companies.  Through Norwegian holding companies Norske Treindustrier AS, Norske Skog Holding AS ("**NSH**"), Norske Skog AS ("**NSAS**") and operating companies throughout the world, Norske Skogindustrier operated paper mills primarily located in Europe and Australia (the "**Norske Enterprise**").  The Norske Enterprise is one of the largest producers of newsprint and magazine paper in the world.  Ottesen Declaration, ¶ 11.

19.     The Norske Enterprise has the following corporate structure:



Ottesen Declaration, ¶ 12.

20.    Norske Skogindustrier was the ultimate parent of the Norske Enterprise.  Prior to commencement of the Norway Bankruptcy, all major financing and operational decisions for the Norske Enterprise were made by the board of directors for Norske Skogindustrier ("**Norske Board**").  Ottesen Declaration, ¶ 13.

21.    Cyrus Capital Partners L.P. ("**Cyrus**") is a hedge fund sponsor, and in its role as sponsor for several investment vehicles, Cyrus acted as agent and advisor to ultimate holders of a number of the Norske Enterprise's debt instruments.  In December 2015 through April 2016, Cyrus became one of Norske Skogindustrier's largest shareholders.  Ottesen Declaration, ¶ 14.

22.    The Norske Enterprise went through a series of refinancing and restructuring transactions in February 2015 ("**First Restructuring**").  A portion of Norske Skogindustrier's unsecured debt instruments maturing in 2015, 2016, 2017, and 2033 ("**Subordinated Unsecured Notes**") were exchanged ("**Exchange Offer**") for new unsecured debt instruments maturing in 2021 and 2023 issued by NSH, a newly established intermediary holding company ("**Prior Exchange Notes**").  Ottesen Declaration, ¶ 15.

23.     The Prior Exchange Notes were guaranteed by certain other companies within the Norske Enterprise, including Norske Skogindustrier.  Ottesen Declaration, ¶ 15.

24.     The holders of Subordinated Unsecured Notes who participated in the Exchange Offer received a combination of Prior Exchange Notes and cash more or less equal to the market value of the respective Subordinated Unsecured Notes they offered for exchange along with a small premium.  Ottesen Declaration, ¶ 16.

25.     In addition to the Exchange Offer, the First Refinancing included the establishment of NSAS, a second new intermediary holding, in order to purchase all of Norske Skogindustrier's ownership interests in the Norske Enterprise's operating companies (the "**Drop Down**") and to issue new senior secured notes maturing in 2019 ("**Senior Secured Notes**").  Ottesen Declaration, ¶ 17.

26.     The Senior Secured Notes were secured by, *inter alia*, all issued share capital in the Norske Enterprise's European and Australian operating companies, as well as the Norske Enterprise's intermediary holding companies.  The Senior Secured Notes were guaranteed by Norske Skogindustrier.  Ottesen Declaration, ¶ 17.

27.     The funds received from the issuance of the Senior Secured Notes was partially used to pay the cash component in the abovementioned Exchange Offer.  Ottesen Declaration, ¶ 18.

28.     The participation of holders of the Subordinated Unsecured Notes in the Exchange Offer was low. This resulted in the Norske Enterprise facing Senior Secured Notes maturing in 2019, Prior Exchange Notes maturing in 2021 and 2023, together with considerable amounts of Subordinated Unsecured Notes maturing in 2016, 2017 and 2033.  Ottesen Declaration, ¶ 19.

29.     By the summer of 2015, it was clear that the Norske Enterprise's liquidity would be insufficient to repay the Subordinated Unsecured Notes maturing in June 2016 ("**2016 SUN Notes**"), a substantial portion of which were held by Cyrus.  Ottesen Declaration, ¶ 20.

30.     Accordingly, during the summer of 2015, the Norske Board started working on a second refinancing scheme ("**Second Restructuring**").  Ottesen Declaration, ¶ 20.

31.     In connection with the Second Restructuring, holders of the Subordinated Unsecured Notes maturing in 2017 were offered to exchange their notes into a package approximating the following: (i) 47% Subordinated Unsecured Notes maturing in 2026; (ii) 36% perpetual notes maturing in 2115 (treated as equity for accounting purposes); and (iii) a 17% par-value write off.  Ottesen Declaration, ¶ 21.

32.     Further, certain liquidity initiatives, financed in part by Cyrus, were implemented to finance the repayment of the upcoming maturity of the 2016 SUN Notes, including the following:

- The issuance of a new Norwegian Securitization Facility ("**NSF**") for 100 Million EUR with NSAS (the direct parent of the Norske operating companies) serving as primary obligor;

- The issuance of an additional 10 Million EUR of secured debt in accordance with the Senior Secured Notes indenture to NSAS;

- The issuance of a 20 Million EUR bridge loan to finance the purchase price the Norske Enterprise would eventually receive in relation to the sale of a New Zealand geothermal power plant; and

- The issuance of share capital in Norske Skogindustrier for 15 Million EUR.

Ottesen Declaration, ¶ 22.

33.     The NSF was secured with, among other things, pledges in the inventory receivables and bank accounts of certain of the Norske Enterprise's European operating companies.  Because of the NSF's security package and its placement in the corporate structure –

the primary obligor was NSAS – it was senior both to the Senior Secured Notes and the Prior Exchange Notes for all practical matters.  Ottesen Declaration, ¶ 23.

34.     Over the objection of certain of the holders of the Senior Secured Notes represented by Citibank N.A., the cash received by NSAS from the NSF was upstreamed, either directly or indirectly, to Norske Skogindustrier to repay the 2016 SUN Notes ("**Upstreaming and Repayment**").    Ottesen Declaration,  ¶ 24.    On information and belief, Cyrus received approximately 31 Million EUR through the Upstreaming and Repayment.  Ottesen Declaration, ¶ 24.

### The Norway Bankruptcy

35.     Due to the Norske Enterprise's continuing financial difficulties, on December 19, 2017 ("**Norwegian Petition Date**"), the Norske Board filed a voluntary petition on behalf of Norske Skogindustrier with the Oslo Court. ("**Norway Bankruptcy Petition**").    Ottesen Declaration, ¶ 25; Exhibit 2.

36.     On December 20, 2017, four of Norske Skogindustrier's Norwegian subsidiaries also filed voluntary petitions for liquidation with the Oslo Court: Norske Skog Holding AS, Norske Treindustrier AS, Lysaker Invest AS, and Norske Skog Eiendom AS ("**Norwegian Subsidiaries**"). Ottesen Declaration, ¶ 26.

37.     On December 19, 2017, the Petitioner was appointed bankruptcy trustee of the Norske Skogindustrier Estate by the Oslo Court ("**Norway Bankruptcy Order**") and on December 20, 2017 the Petitioner was appointed as trustee for the Norwegian Subsidiaries. Ottesen Declaration, ¶ 27; Exhibit 1.

38.    On the Norwegian Petition Date, Norske Skogindustrier's records listed approximately 287 Million EUR in assets and approximately 924 Million EUR in liabilities. Ottesen Declaration, ¶ 28.

39.    As Trustee, the Petitioner has begun the process of adjudicating claims received in accordance with the provisions of the Bankruptcy Act, and creditors will receive an adjudication notice advising that their claim has been accepted, partially accepted or rejected in full.  Further, the Petitioner has been involved in the liquidation of certain of the assets of Norske Skogindustrier and the Norwegian Subsidiaries within Norway.  Ottesen Declaration, ¶ 29.

40.    At present, the Petitioner is currently investigating, *inter alia*, potential claims and causes of action to recover amounts due from third parties in connection with the events leading up to the Norway Bankruptcy, including the Second Restructuring and the subsequent Upstreaming and Repayment.  Ottesen Declaration, ¶ 30.

41.    In particular, the Petitioner filed this application, *inter alia*, to ensure that the United States court system and discovery rules are available in relation to any claims that may arise therefrom, as certain parties connected to the Upstreaming and Repayment are located within the United States, and there are witnesses and evidence related to the circumstances leading to Norske Skogindustrier's insolvency and bankruptcy located in the United States. As the Petitioner's investigations continue, it may be determined not to utilize the rights of United States court access and discovery.  Ottesen Declaration, ¶ 30.

## Norwegian Law on Insolvency

42.    The Bankruptcy Act is the primary law governing the two types of statutory bankruptcy proceedings involving a Norwegian company.  Bankruptcy proceedings may be voluntary or compulsory.  The Bankruptcy Act is supplemented by the Satisfaction of Claims Act

of 8 June 1984 No. 59 (the "**Claims Act**"), the Mortgage Act of 8 February 1980 No. 2, as well as

the Limited Liability Companies Act of 13 June 1997 No. 3, the Financial Collateral Act of 26

March 2004 No. 17 and the Enforcement Act of 26 June 1992 No. 86 (collectively, the "**Norway**

**Bankruptcy Laws**").  Foreign Counsel Declaration, ¶ 21.

43.    The first type of Norway Bankruptcy proceeding is known as a "judicial debt

negotiation" proceeding, wherein the court, debtor, creditors and administrator work together to

rescue the debtor's business.  In a "judicial debt negotiation" proceeding, the administrator

maintains primarily a supervisory role.  To that end, the debtor retains legal power over its assets

and the board of directors remains in control of the ongoing business.  Foreign Counsel

Declaration, ¶ 22.

44.    The second type of Norway Bankruptcy proceeding, applicable to Norske

Skogindustrier given that the Oslo Court has declared it unable to meet its obligations in a timely

manner and that its "payment difficulties are not of a temporary nature," entails the winding-up

and liquidation of the debtor.  Foreign Counsel Declaration, ¶ 23.

45.    In Norway, a winding-up proceeding will only commence if the debtor is insolvent.

A debtor is deemed insolvent if the bankruptcy court finds both: (1) insufficiency (the debts exceed

the value of the debtor's assets); and (2) illiquidity (the debtor is unable to pay its debts as they

fall due, and the situation is not temporary).  Foreign Counsel Declaration, ¶ 24.

46.    The purpose of a winding-up proceeding is substantially similar to a bankruptcy

proceeding in the United States inasmuch as this Norwegian proceeding prioritizes liquidating the

debtor's assets for benefit of its creditors and then distributing the proceedings amongst creditors

pursuant to statutory repayment rules.  Foreign Counsel Declaration, ¶ 26.

47.     In winding-up proceedings, the bankruptcy estate is a separate legal entity with its own identification number in the Norwegian company register.  Foreign Counsel Declaration, ¶ 27.

48.     Upon the opening of a winding-up proceeding, the company no longer has any power over nor title to its assets as the estate automatically seizes the company's assets.  The administrator of the estate may exempt from seizure assets perceived to be valueless or that create liabilities for the estate, upon which legal title and power over reverts to the debtor.  Foreign Counsel Declaration, ¶ 28.

49.     The Claims Act allows the bankruptcy estate to clawback, *i.e.*, avoid, transactions that occurred within three months prior to the bankruptcy filing, and in some cases, transactions that occurred either one, two or up to ten years prior to the bankruptcy filing can be avoided.  Specifically, the Claims Act authorizes the Estate to invalidate transactions contrary to a fair and equitable distribution of the debtor's assets.  Transactions the Estate can clawback include those considered to be extraordinary payments, gifts and security for old debts.  Foreign Counsel Declaration, ¶ 29.

50.     The winding-up of Norske Skogindustrier is carried out by the Oslo Court because Norske Skogindustrier maintained its principal place of business in Oslo, Norway.  The Oslo Court is the only County Court in Norway that specializes in insolvency matters, among other things.  Foreign Counsel Declaration, ¶ 30.

51.     Upon the opening of the Norway Bankruptcy, the Oslo Court immediately appointed the Trustee and directed the formation of a creditors committee ("**Creditors Committee**").  The Trustee is in charge of the management of the Norske Skogindustrier Estate and the Creditors' Committee technically administers the Norske Skogindustrier Estate.  Within

this division of responsibility, the majority of decisions are taken by the Trustee alone.    For

instance, the Trustee represents the Norske Skogindustrier Estate in dealings with third parties and

can request general meetings of creditors.  Foreign Counsel Declaration, ¶ 34.

52.    Broadly speaking, the Trustee is entrusted to "safeguard the common interests of

the creditors against the individual creditor and third parties" by "conducting the necessary

activities to wind up the estate."  Foreign Counsel Declaration, ¶ 35.

53.    The Bankruptcy Act sets out many of the powers and authority of the Trustee.

These powers include, but are not limited to:

1)    identifying the assets of the estate, and for that purpose examining and if
necessary contesting any demands for a surrender of assets existing in the
estate;

2)    collecting the accounts receivable of the debtor;

3)    ensuring the safekeeping and and selling of assets;

4)    ascertaining whether each claim should be approved as entitled to dividends
and whether it has a preferential right;

5)    keeping accounts for the estate according to government regulations;

6)    conducting the meetings of the Board of Trustees/Creditors Committee and
keeping minutes of the deliberations and adopted resolutions;

7)    requesting information concerning the debtor's capital and income from the
Norwegian revenue authorities;

8)    determining the extent to which the debtor's business should continue under
direction of the estate;

9)    deciding whether or not to assume the debtor's contractual obligations,
including whether to terminate employment agreements; and

10)    requesting avoidance of unfavorable or fraudulent transactions.

Foreign Counsel Declaration, ¶ 37.

54.    The Trustee must consult with the Creditors Committee in all matters of major

importance, and is required to submit reports to the Oslo Court, the Creditors Committee and the

creditors regarding the financial condition of the bankruptcy estate.  Foreign Counsel Declaration, ¶ 38.

55.     As set forth in the Norway Bankruptcy Order, in conjunction with the Oslo Court and the Creditors Committee, the Trustee has been authorized to exercise all powers set forth in the relevant provisions of the Norway Bankruptcy Laws.

56.     The Norway Bankruptcy is a fair and equitable proceeding, as all creditors and interest holders of the Norske Skogindustrier Estate have an opportunity to be heard by the Oslo Court and no creditor will be prejudiced because the proceeding is foreign-based.

### Norske Skogindustrier's Activities in Norway

57.     Norske Skogindustrier is a Norwegian public limited liability company under the laws of Norway with Business Register Number 911 750 961. The company was first established in 1962. The company's postal address was P.O. Box. 294 Skøyen, 0213 Oslo, Norway.  Norske Skogindustrier maintained a principal place of business at Karenslyst Allé 49, 0279 Oslo, Norway. Foreign Counsel Declaration, ¶ 9; Ottesen Declaration, ¶ 10.

58.     Norske Skogindustrier was a holding company, which through its subsidiaries, produced newsprint and magazine paper globally.  Up until the Norwegian Petition Date, Norske Skogindustrier, through its subsidiaries, operated paper mills in Norway, Austria, France, Brazil, Australia and New Zealand. Foreign Counsel Declaration, ¶ 10; Ottesen Declaration, ¶ 11.

59.     The Trustee is currently administering the Norske Skogindustrier Estate from his office in Norway.  Ottesen Declaration, ¶ 8.

60.     In addition, Norske Skogindustrier maintained Norway as its headquarters and was operated from Norway.  A substantial portion of Norske Skogindustrier assets – bank accounts and ownership interests in subsidiaries - were located in Norway.  Ottesen Declaration, ¶ 37.

61.     Norske Skogindustrier commenced the Norway Bankruptcy before the Oslo Court located in Norway, and all creditors of the Norske Skogindustrier Estate may submit their claims in the Norway Bankruptcy.  Due to the Petitioner's appointment by the Oslo Court, the Norske Board has no authority over the Norske Skogindustrier Estate.  Ottesen Declaration, ¶ 38.

62.     The liquidation of Norske Skogindustrier is taking place in Norway.  Nearly all of the work to date relating to the Norway Bankruptcy (and post-liquidation activities) has been conducted in Norway and all of the work is supervised by the Trustee and the Creditors Committee for the Norske Skogindustrier Estate, and, ultimately, subject to the supervision of the Oslo Court. Ottesen Declaration, ¶ 39.

63.     All relevant creditors, stakeholders, and shareholders regard Norske Skogindustrier as a Norwegian company.  Ottesen Declaration, ¶ 40.

64.     There is no other pending foreign insolvency proceeding except the Norway Bankruptcy in which Norske Skogindustrier or the Norske Skogindustrier Estate is the subject of the proceeding.  Ottesen Declaration, ¶ 42.

65.     There is no pending actions in the United States in which Norske Skogindustrier or the Norske Skogindustrier Estate is named as a party.  Ottesen Declaration, ¶ 43; Exhibit 3.

66.     In addition to recognizing the Norway Bankruptcy as a foreign main proceeding, the Petitioner respectfully requests that this Court authorize the issuance of discovery pursuant to 11 U.S.C. § 1521(a)(4), if the Petitioner determines at a later date that taking discovery concerning the assets, affairs and liabilities of Norske Skogindustrier is in the best interests of the estate. Ottesen Declaration, ¶ 44.

67.    It is possible that discovery will be sought from Cyrus and certain third party financial institutions in connection with the Second Restructuring and the Upstreaming and Repayment.  Ottesen, ¶ 45.

68.    In particular, the Norske Skogindustrier Estate is investigating  potential claims against certain debtholders, equityholders and directors in connection with certain transfers made by Norske Skogindustrier and its subsidiaries prior to its entry into liquidation ("**Potential Third Party Claims**").  The Potential Third Party Claims are broadly categorized as: (i) potential claims against management and affiliates, directors, officers and consultants of Norske Skogindustrier in connection with their fiduciary duties and management of Norske Skogindustrier and its assets; and (ii) claims against debtholders and equity holders in connection with the Upstreaming and Repayment.  Ottesen Declaration, ¶ 46.

69.    The right to obtaining this information via the issuance of United States discovery will assist the Petitioner in realizing assets of the Norske Skogindustrier Estate and determining whether the Norske Skogindustrier Estate should commence actions against third parties.  Ottesen Declaration, ¶ 47.

## ARGUMENT

## I.    THE NORWAY BANKRUPTCY SHOULD BE RECOGNIZED UNDER CHAPTER 15

70.    Section 1517 of the Bankruptcy Code mandates entry of an order recognizing a "foreign proceeding" if it appears that recognition will not undermine U.S. public policy and: "(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign non-main proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." 11 U.S.C. § 1517(a).

71.     Each of those requirements is met here, and entry of an order in the form of **Exhibit 1** to this Petition will significantly aid the Petitioner's efforts to administer the Norske Skogindustrier Estate's assets and liabilities, and ensure a fair and equitable treatment of and greater distributions to the Norske Skogindustrier Estate's creditors and interest holders.

**A.     The Norway Bankruptcy is a Foreign Proceeding and the Petitioner Is a Foreign Representative**

72.     Section   101(23)   of   the   Bankruptcy   Code   defines   a   foreign proceeding as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).  This definition incorporates the term foreign representative, which the Bankruptcy Code in turn defines as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."  11 U.S.C. § 101(24).  There is no question that the Petitioner and the Norway Bankruptcy satisfy each of these requirements.

73.     First, the Norway Bankruptcy is a judicial proceeding in a foreign country, Norway, subject to the control and supervision of the Oslo Court.  Foreign Counsel Declaration at ¶ 44.  All claims against the Norske Skogindustrier Estate may be submitted in the Norway Bankruptcy and all claimants have the right to access the Oslo Court and contest decisions of the Petitioner. Foreign Counsel Declaration, ¶¶ 30-33.

74.     Second, the Norway Bankruptcy is being administered by the Petitioner, who was appointed by the Oslo Court pursuant to the Norway Bankruptcy Act as trustee to oversee the

winding up of the Norske Skogindustrier Estate according to the provisions of the Norway Bankruptcy Act. Foreign Counsel Declaration, ¶ 13-14. As such, the Petitioner is a "person authorized in a foreign proceeding to administer the reorganization or the liquidation of [Norske Skogindustrier's] assets or affairs," within the meaning of Section 101(24).

75. Third, the relevant portions of the Norway Bankruptcy Act and related rules that govern the Norway Bankruptcy specifically relate to proceedings in Norway concerning "insolvency or adjustment of debt." 11 U.S.C. § 101(23).

76. Finally, the Norway Bankruptcy is a "collective … proceeding" because it "considers the rights and obligations of all creditors." *See, e.g., In re Ashapura Minechem Ltd.*, No. 11-14668 JMP (Bankr. S.D.N.Y. Nov. 22, 2011) (quoting *In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009)); *In re Gold & Honey, Ltd.*, 410 B.R. 357, 370 (Bankr. E.D.N.Y. 2009) (citations omitted). Among other tasks, the Petitioner currently is in the process of collecting and assessing claims from all of the Norske Skogindustrier Estate's creditors, and the Creditors Committee has been formed to work with the Trustee on the Norway Bankruptcy.

77. As discussed above, this Court has found that official insolvency proceedings brought pursuant to the laws of other Nordic countries qualify as a "foreign proceeding," and that the individual appointed to oversee the foreign debtor's estate qualifies as a "foreign representative" for purposes of section 101(23) and (24). This District has recognized similar liquidation proceedings by Nordic entities as foreign main proceedings under similar circumstances. *In re Containership Company (TCC) A/S*, Case No. 11-12622 (Bankr. S.D.N.Y. July 1, 2011) (granting recognition of Danish liquidation as a foreign main proceeding); *In re Atlas Shipping A/S*, Case. No. 09-10314 (Bankr. S.D.N.Y. February 25, 2009) (granting recognition of Danish liquidation as a foreign main proceeding); *In re Britannia Bulkers A/S*, Case No. 08-15187

(Bankr. S.D.N.Y. January 30, 2009) (granting recognition of Danish liquidation as a foreign main proceeding and granting discovery requests); *See also, Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452 (2d Cir. 1985) (vacating an attachment against a Swedish debtor's assets and recognizing a Swedish foreign insolvency proceeding).

### B.    The Norway Bankruptcy is a Foreign Main Proceeding

78.    In the absence of evidence to the contrary, the debtor's registered office, here in Norway, is presumed to be its COMI.  11 U.S.C. §1516(c).  Here, there is no such contrary evidence.

79.    As discussed in detail above, Norske Skogindustrier was formed as a public limited liability company pursuant to the laws of Norway, maintained its registered office in Norway, and its documents and other correspondence made it clear that Norske Skogindustrier was a Norwegian company.  Foreign Counsel Declaration, ¶ 9; Ottesen Declaration, ¶ 10.

80.    In any case, a foreign debtor's COMI is determined at the time the Chapter 15 petition is filed, and the Second Circuit has held "that a debtor's COMI should be determined based on its activities at or around the time the Chapter 15 petition is filed, as the statutory text suggests."  *In re Fairfield Sentry Ltd.,* 714 F.3d 127, 137 (2d Cir. 2013); *In re Millennium Global Emerging Credit Master Fund Limited,* 458 B.R. 63 (Bankr. S.D.N.Y. 2011).

81.    It is well-established that in determining an entity's COMI, courts consider any relevant factors, including: (i) the location of the debtor's assets; (ii) the location of the debtor's books and records; (iii) the location of the majority of the debtor's creditors; (iv) the commercial expectations and knowledge of the debtor's creditors; and (v) the location of those who actually manage the debtor.  *See, e.g., In re Suntech Power Holdings Co., Ltd.,* 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) (citing cases and describing consideration of the debtor's "nerve center" including from where the debtor's activities <u>are</u> controlled).

82.    As an initial matter, a substantially portion of Norske Skogindustrier assets – bank accounts and ownership interests in subsidiaries - are located in Norway.  Ottesen Declaration at ¶ 37.

83.    Applying the foregoing factors to this case, there is no doubt that the Norske Skogindustrier Estate's COMI is Norway.  Since the commencement of the Norway Bankruptcy in 2017, all activities associated therewith have been conducted and/or overseen by the Petitioner from Norway. Among other things, the Petitioner was appointed by the Oslo Court, is engaged in the process of investigating and assessing the claims of the Norske Skogindustrier Estate and its creditors and interest holders from Norway, is liquidating the assets of Norske Skogindustrier and certain Norwegian subsidiaries before the Norway Bankruptcy, and is engaged in discussions with creditors and interest holders, all from his office in Norway.  Ottesen Declaration at ¶¶ 38-39.

84.    Under the circumstances, the Petitioner submits that there is ample evidence and precedent to support recognition of the Norway Bankruptcy as a foreign main proceeding.

**C.    The Norway Bankruptcy Meets All Other Requirements for Recognition**

85.    In addition to being a foreign main proceeding brought by a duly appointed foreign representative, the Norway Bankruptcy meets all other requirements for recognition under section 1515 of the Bankruptcy Code.  The Petition is accompanied by a translated copy of the Norway Bankruptcy Order issued by the Oslo Court, which evidences the commencement of the Norway Bankruptcy and the appointment of the Petitioner as trustee of the Norske Skogindustrier Estate. The Petition also is accompanied by a declaration that contains a statement identifying all foreign proceedings with respect to the Norske Skogindustrier Estate that are known to the Petitioner.  *See* 11 U.S.C. §§ 1515(b),(c); *see also* Ottesen Declaration, Exhibit 3.

86.    The Petition likewise is accompanied by a declaration containing the information required by Federal Rule of Bankruptcy Procedure 1007, including the disclosures required by

Federal Rule of Bankruptcy Procedure 7007.1, including a statement indicating that there are no other persons or entities known to the Petitioner that are authorized to administer foreign proceedings with respect to Norske Skogindustrier or the Norske Skogindustrier Estate, and a list of all parties to litigation with Norske Skogindustrier and the Norske Skogindustrier Estate in the United States. *See* Ottesen Declaration at Exhibit 3. All documents supporting the Petition are in English. *See* 11 U.S.C. § 1515(d).

87.     For all of these reasons, this Court can and should find that all of the requirements for recognition of the Norway Bankruptcy as a foreign main proceeding under chapter 15 have been satisfied.

88.     Section 1521(a) provides that "[u]pon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief including . . . (4) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities[.]"

89.     This District has recognized the broad scope of section 1521(a)(4). *See In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 346 (Bankr. S.D.N.Y. 2012) (citation and footnote omitted) ("Section 1521(a)(4) provides specifically that the Court may enter an order providing for 'the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities.' … By its terms, this provision enables a Foreign Representative to take broad discovery concerning the property and affairs of a debtor.").

90.     Similarly, this Court has discretion to order the disclosure of books, records, papers, electronic correspondence, banking and other information relating to Norske Skogindustrier, its

assets or financial affairs located in this District or that is within the possession, custody, or control

of parties subject to the jurisdiction of this Court.  *See, e.g.,* 11 U.S.C. §§ 1519(a)(2), (3), 1521

(a)(5),(7); *see also In re Gee*, 53 B.R. 891, 905 (Bankr. S.D.N.Y. 1985) (under former section 304,

the Court issued order "directing all persons and entities within the Southern District of New York

which now have or may hereinafter obtain books and records, to forthwith turn over all such books

and records to [the Liquidator]"); *see also, In re 47-49 Charles Street, Inc.*, No. 93 B 42821(CB)

(S.D.N.Y. Mar. 30, 1999) ("Title 11, section 521(4) of the Bankruptcy Code clearly requires the

Debtor to surrender its books and records to the trustee, and title 11, section 542(e) extends that

requirement to attorneys, accountants and other persons who may hold such books and records.").

91.     Any third party who can be shown to have a relationship with a debtor can be made

subject to investigation by a bankruptcy examiner since the purpose of such an investigation is to

aid in discovery of assets.  *See In re Ionosphere Clubs, Inc.,* 156 B.R. 414, 432 (S.D.N.Y. 1993)

(citing, e.g., *In re Vantage Petroleum Corp,* 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983); *Sachs v.*

*Hadden,* 173 F.2d 929, 931 (2d. Cir. 1949)), for the proposition that "[t]he investigation of an

examiner in bankruptcy, unlike civil discovery under Rule 26(c), is supposed to be a 'fishing

expedition,' as exploratory and groping as appears proper to the Examiner.  Because the purpose

of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown

to have a relationship with the debtor can be made subject to a Rule 2004 investigation."  This

Court routinely orders similar relief in cases under chapter 15.  *See, e.g.*, *In re Millennium Globe*

*Corp.*, 471 B.R. 342, 346-47 (Bankr. S.D.N.Y. 2012) (noting that "there is no authority in chapter

15 limiting the discovery available to foreign representatives"); *In re Toft*, 453 B.R. 186, 193

(Bankr. S.D.N.Y. 2011) (noting that the foreign representative could take discovery under 15

U.S.C. § 1521(a)(4) even though the debtor had no assets or business in the United States, as this

provision is "more explicit" in granting discovery requests than its predecessor statute 11 U.S.C.

§ 304); *In re Cozumel Caribe, S.A. de C.V.*, No. 10-13913 (MG) (Bankr. S.D.N.Y. Oct. 20, 2010)

(granting foreign representative and "any other person properly appointed by the Mexican court"

discovery rights under 11 U.S.C. § 1521(a)(4)).

92.     Discovery and turnover of information concerning Norske Skogindustrier's assets,

affairs, rights, obligations or liabilities from Cyrus and certain third party financial institutions may

be necessary to the Petitioner's efforts to fully investigate the Norske Skogindustrier Estate's

claims against third parties so as to eventually recover Norske Skogindustrier's assets.  Under the

circumstances, the Petitioner respectfully request that upon recognition, this Court enter an Order:

    a.   Permitting, but not requiring, the Petitioner to issue discovery requests to Cyrus and certain third party financial institutions in its discretion and as necessary, so as to ascertain information concerning Norske Skogindustrier's assets and transfers prior to the commencement of the Norway Bankruptcy and critical information concerning the Norske Skogindustrier Estate's claims against third parties; and

    b.   granting the Petitioner authority to assert claims of the Norske Skogindustrier Estate against parties that are subject to jurisdiction in the United States.

### REQUEST FOR WAIVER OF LOCAL BANKRUPTCY RULE 9013-1(a)

93.     It is respectfully requested that this Court waive and dispense with the requirement

set forth in Rule 9013-l(a) of the Local Rules for the United States Bankruptcy Court for the

Southern District of New York that any motion filed  by the Norske Skogindustrier Estate be

accompanied by a memorandum of law on the grounds that the relevant authorities in support of

the Petition are contained herein.

### HEARING DATES AND NOTICES

94.     Section 1517(c) of the Bankruptcy Code requires that "[A] petition for recognition

of a foreign proceeding be decided upon at the earliest possible time."  Bankruptcy Rule 2002 sets

forth a twenty-one day notice requirement to parties in interest with certain exceptions to approve

the Petition.  If no objections to this Petition are filed by the date ordered for such objections, the

Petitioner request that the Court enter the proposed order recognizing the Norway Bankruptcy as

a foreign main proceeding without a hearing pursuant to Local Rule 2002-2.  The Petitioner and

his counsel, however, are of course willing to appear and will be prepared to answer any questions

that the Court may have.

95.     Subsection (q)(1) of Rule 2002 governs notice of a petition for recognition of a

foreign proceeding.  The Petitioner does not currently seek provisional relief nor is there pending

United States litigation.  Nevertheless, out of an abundance of caution, the Petitioner's first day

filings in this case have been served upon all of the Norske Skogindustrier Estate' creditors located

in the United States concurrently with the filing of this Petition.

96.     No previous application for the relief requested in this Petition has been made in

this or any other court in the United States.

## CONCLUSION

WHEREFORE, the Petitioner respectfully request that this Court enter an Order,

substantially in the form of Exhibit 1 to this Petition, granting the relief requested herein and such

other and further relief as may be just and proper.


Dated: New York, New York
        November 16, 2018

                                        Respectfully submitted,

                                        HOLLAND & KNIGHT LLP


                                        By:    /s/ Warren E. Gluck, Esq.
                                               Warren E. Gluck, Esq.
                                               Richard A. Bixter, Jr., Esq. (*pro hac
                                               pending*)
                                               Sheila (Qian) Shen, Esq.
                                               31 West 52nd Street

New York, NY 10019
Telephone:  212-513-3200
Telefax: 212-385-9010
warren.gluck@hklaw.com
richard.bixter@hklaw.com
qian.shen@hklaw.com

*Counsel for the Petitioner*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, Tom Hugo Ottesen declares as follows:

I am the duly appointed Trustee (the "**Trustee**") of the bankruptcy estate of Norske Skogindustrier ASA ("**Norske Skogindustrier Estate**"), currently being administered under the supervision of the Oslo Bankruptcy Court (the "**Oslo Court**"), Case No. 17-198212KON-OBYF/1 (the "**Norway Bankruptcy**"), pursuant to the Bankruptcy Act of 8 June 1984 No. 58 (the "**Bankruptcy Act**"). I have full authority to verify the foregoing *Verified Petition for Recognition of Foreign Insolvency Proceedings and Application for Additional Relief, Pursuant to Sections 1504, 1507, 1509, 1515, 1517, 1520 and 1521 of the Bankruptcy Code* (the "**Verified Petition**"). I have read the Verified Petition, am informed, and believe that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this  $\underline{15}$  day of November, 2018, in  $\underline{\hspace{3cm}}$

**Tom Hugo Ottesen**
*Trustee of the Estate of Norske*
*Skogindustrier ASA*